Case No. 2-17-0217. Stacey William Bach was one of the next friends of Alexander Rosenbach, plaintiff's son. The Six Flags Entertainment Corporation and Great American LLC defendants petitioner. Arguing on behalf of the Attorney General to be decapitated and or celebrated. Arguing on behalf of the plaintiff's son, Mr. Philip A. Crosby. Both sides are ready to proceed? Yes. Now, counsel, I understand there's two open motions to cite additional authority. Is that correct? My understanding is that there is one open motion in your honor. I understand that the first motion was granted. And you did receive that order? Yes, we did. Thank you. With regard to the second, did you have any objection? The second is a repellent response. Okay. So no objection. Very good. You ready to proceed then? Yes, I am, Your Honor. Good morning, and may it please the Court, Kathleen O'Sullivan for the appellant Six Flags and Great America. The General Assembly has limited who has a right of action under the Biometric Information Privacy Act to those persons who have been aggrieved by a violation of the Act. This Court should conclude that a person aggrieved by a violation of the Act is someone who has actually been injured. That is so because of the text of the law and because of the reasoning of cases interpreting BIFA and other statutes containing that formulation, aggrieved by a violation. Our argument boils down to this. Aggrieved means injured. Period. Now, the plaintiffs say we are arguing for a draconian rule requiring pecuniary injury. That's not what we said, and that's not what the case law requires. But what the statute and the case law do require is some injury, and that's what dooms the plaintiff's complaint here. Now, the circuit court ruled that the plaintiffs had a right of action under BIFA and can proceed for technical violations that caused no injury. That was wrong because it would require rewriting the statute. And so the primary reason to reverse the circuit court is the text of the law, and we start with first principles. And it's the duty of the court to enforce the law as written. And it asks that you look at Section 20, which is the section containing the right of action. And the plaintiff would have the court strike the words aggrieved by a violation of this Act. And if you're looking along with me, they would have you add to the end of the existing language after it says party. They would have you add that violates one of the requirements of this Act. But that's not what the law says, and it's not for this court to rewrite the law. In enforcing the law as written, the dictionary is one tool that the court can look to in determining the plain meaning of the Act. And that's what several of the federal district courts have done. And they looked at the definition of aggrieved party. And in Black's Law Dictionary, there's a separate definition for the meaning of the word party, meaning those terms must have some distinct meaning. And then an adverse, excuse me, an aggrieved party is someone whose rights have been adversely affected or injured. And again, go ahead. Plaintiffs cite some examples in Illinois statutes of where an aggrieved party is more of a strict liability. It's like the Uniform Commercial Code, the Mortgage Act. Can you respond to that? Yes, Your Honor, certainly. They do point to those statutes. This is not a strict liability statute. Again, if you look at Section 20, it has the word negligently in there. And if you look at the Plaintiff's Opposition Brief, they actually eliminate that word from the text in their use of an ellipsis when they're quoting from the statute. And the concept of negligence, which we all learned in torts, is duty, breach, causation, injury. So implicit in the legislature's use of the word negligence is an injury requirement. Well, there's two subsections. One is negligence and one is intent or recklessness. That's right, Your Honor. But my point is with either of them, there is no strict liability there. The next words that they cut out of the statute when you're continuing with Section 20 are the words whichever is greater. When the legislature said that for negligent violation, the recovery is liquidated damages of $1,000 or actual damages. Whichever is greater, meaning the legislature set a floor of $1,000. And since it is Hornbook law that liquidated damages are not recoverable unless there is some actual loss, and liquidated damages are supposed to be a reasonable estimate of actual damages, there must be some actual damages, again, pecuniary or non-pecuniary, to recover under the statute. What would be an example of a non-pecuniary injury in this type of a context? Well, a couple of examples we have from the case law. The AIDS Confidentiality Act that was enacted in the same legislative session. There's a case where someone's HIV status was disclosed by a physician about a patient to other people, and the allegations of non-pecuniary injury were there. That's a disclosure. The injury there is the disclosure. That's right. That's right, Your Honor. It's hard for me to conceive of an example that could be non-pecuniary based on the mere collection. But the plaintiff is the master of her complaint, and she hasn't pleaded any. And the order certifying these questions to this court said that in his complaint, plaintiff does not allege any actual damages. So when the statute set out the steps in which to gather this information and to make advisers, et cetera, if there was a technical violation, they set out no remedies for that? They set out a remedy in case there was harm or injury. And in the absence of harm or injury, what the legislature has provided is that there's no right of action. So basically no harm, no foul. It doesn't matter whether you comply with the statute or not. When the legislature wrote, agreed by violation, they were providing a right of action for people who were actually injured, and that's consistent of the plaintiff in their opposition to our submission of the Second Circuit case. I'd urge you to take a look at it. They're writing about standing. And from this Court's own decision in the Moglio case, which involved a data breach, excuse me, it involved a theft of computers that had private and confidential health information. And this Court ruled that the risk of identity theft was too highly speculative or attenuated for there to be any standing or any injury. It was the anticipatory, if you will. Excuse me? It was the anticipatory, if you will. Anticipatory in the sense that it hadn't happened. Correct. Right. There had been no disclosure in that context, so there was no injury. And just like here, with no disclosure of this information to anyone else, there's simply no harm whatsoever. And the Circuit Court did recognize that. But you didn't answer my question. My point is your client has been under your analysis no obligation to follow the statute. Well, I'm not saying that, Your Honor. What are you saying? What I'm saying is that there is no right of action to enforce it absent the disclosure. Whose obligation? Where is that statute enforced? How is it enforced? The statute is enforced when there is an actual injury. So as long as no one is hurt, your client is free to ignore the statute, do what they wish, keep the information as long as they wish, use it for any purpose for however long without repercussion. No, I think that's broader than what we're arguing, and I point the Court back to the questions that have been actually certified here.  And so I'm asking you for the other side of that premise. Certainly. And part of your question was could they use it for any purpose. And I would say no. Okay. They can't sell it or disclose it. Why? Correct. Anything short of that? Well, they have a compliance, excuse me, they have a retention period. And if they use it. And where would that be published? Well, on the website, it's actually alleged in the complaint that it was right there on the website in bold letters, biometric season passes. And so we are assuming for the purposes of the motion to dismiss and this appeal only, that those disclosures weren't given. But I wouldn't want to give the Court the impression that Six Flags was simply acting as if the statute didn't exist. They did act in compliance with the statute. But we're assuming now that exactly as the Circuit Court has written these questions. Okay. But the technical violations, we're assuming the required disclosures weren't given. We're assuming the written consent wasn't given. Is that enough under the statute? And our answer is no. And that reasoning is supported by two Federal District Court decisions that are well-reasoned and thoughtful that the Circuit Court didn't have the benefit of when he ruled. The Circuit Court below is actually the first court to address these questions. And now this court is the first appellate court in the state to do so. But together, those decisions stand for the proposition that the word agreed means someone who has suffered an injury from a violation of the act. The McCullough case, same type of statutory violations alleged here, lack of informed written consent, lack of information on the retention period. The court called those technical violations and ruled that there was no viable claim based on the text of the law and other Illinois statutes. And I think it's important to emphasize here there really are two different things, a statutory right on the one hand and injury on the other. And without injury, there can be no recovery. That argument in the McCullough case, which was from here in the Northern District of Illinois, was adopted and found persuasive by a decision from the Southern District of New York. And while the Second Circuit recently affirmed that decision purely on standing grounds, it casts no doubt on the viability of the motion to dismiss for failure to state a claim for lack of injury, since in essence the standing decision was that there was no injury, in fact. The plaintiff would point you to some other circuit court decisions from courts in Cook County. But if you look at those carefully, those are less well-reasoned. There's the Secura case, and the court there concluded that the word ereved means in context anyone whose biometric data was mishandled. That was the word used by the court. Here, there's no allegation that Six Flags has mishandled the data in any way. There's no allegation of use for any other purpose, sole, sale, excuse me, disclosure. And then there's the Rottner case. A couple of these cases seem to involve tanning companies. So the Rottner v. Palm Beach tan case, which is really kind of a split decision, where the court said, no, there's no actual damages, so you can't recover liquidated damages under the meaning of the statute, but allowed that case to go forward on injunctive relief. Does that make sense to you, if we're looking at Section 20, allowing something to go forward on injunctive relief and not damages? It doesn't make sense to us, Your Honor, and our argument is that the aggrieved person language is the predicate for any form of relief under the statute. You look 1, 2, 3, 4, the various options below it. And the circuit court specifically asked this court to decide the two separate questions, one, liquidated damages, and second, the injunctive relief question. And our position is the analysis should be the same. Can you discuss the second prong of your argument, which was without injury there can be no recovery. Is this Monroy case cut against that somewhat? The Monroy case, I'm trying to bring it to the top of my mind, Your Honor. This is the U.S. District Court case, Judge Gatchell. That's right, Your Honor. So it didn't address the aggrieved person language, Your Honor, and it did address the point that you're pointing to, but we think now we think the better reading of the language of the statute is that when you put together aggrieved with negligently requiring injury and the, excuse me, whichever is greater, that there must be some harm to recovery. If there aren't further questions from the court, I will reserve the rest of my time for rebuttal. I know I have additional time anyway, so thank you very much. I'm going to make these according to Philip Bach on behalf of the plaintiff. Judge Barones correctly interpreted the plain words of the statute to permit the plaintiff to maintain this lawsuit. The Six Flags counsel mentioned this idea about negligence. If the court answers these questions in the affirmative, as we say, it doesn't mean that the plaintiff collects. The plaintiff needs to show that Six Flags was negligent. It sounds like they're saying they weren't, that their website disclosed something. Your Honor asked about a retention policy, and I heard something about the website said there would be a biometric collection, but I didn't hear anything about the retention. So really right now we're just answering, Your Honors are answering two questions of law, reading a four-page statute that's passed in 2008. Six Flags says that only an aggrieved person can file a claim, but they've never actually said who that even could be, who would be aggrieved under this statute. They might say somebody who suffers from identity theft, but why doesn't the legislature say that if a person suffers identity theft? I mean, each of these provisions in 15, we're talking here about B only, but each of them stands on its own and says a private entity must do this, no private entity may do that. Each one of those on its own stands alone. Well, the cases seem to draw the line at disclosure. I mean, Sterk was an example of that, and then it cited some cases in that case where if something is just retained, a person's not aggrieved, but if it's disclosed and, therefore, even though the person's not injured, there's no identity theft, no pecuniary loss, but the disclosure is enough. And we look at the HIV case cited by counsel for that point of law, too. Well, Sterk is obviously a different statute. I don't see a disclosure element of the claim for this case. It's not an element. It's just defining who's aggrieved. It sounds like it would be more important or something. No, it's defining injury. I mean, whether an actual injury is required, it's not necessarily a pecuniary injury because the cases talk about the footnote, I think, in Monroy, talked about the plaintiff there alleged a violation of privacy interest, which would be an injury, you know, according to that footnote. Right. I mean, what we argued in our brief is that there are three kinds of interests, protectable interests that are created by this statute. It's a privacy interest. You know, I'm not allowed to just announce that I've taken everybody's fingerprints in this room, by the way, and you'll just find out what happens. Don't worry. You can come looking for me if something bad happens. You know what I mean? It's a private thing. It's a unique thing. It's a 14-year-old's fingerprint. And the statute says you can't take it without disclosing in writing that you're going to do it and then have a written, signed consent. They didn't do any of that. They just did whatever they wanted. Okay. Mr. Bob, can we answer the questions? Do we, in your opinion, need to answer the questions consistently, or can one be answered in the positive and one in the negative? I mean, one, you are talking about damages, and the other one, you are not. Judge Borges is not. I think they would be. Would it be inconsistent to answer them? I think it would be inconsistent. The first one about the damages, the damages for negligence, is different than the standard for an injunctive relief. It says you can get an injunction if the court deems it appropriate. But the question is whether the person's agreed. And it would be inconsistent to say the person was. Is that the question in the second one, though? The second one? In the second question, do we deal with agreed, or are we just dealing with what you're talking about? You just can't communicate somebody's fingerprints and hold on to them. Well, Your Honor, the second question says whether a person is agreed. And as the Six Flags Council pointed out, the statute says only a person who is agreed can seek an injunction. You're right. Maybe a person who is agreed, but the defendant wasn't negligent. They exercised reasonable care, et cetera, et cetera. But something didn't happen. They didn't actually delete the data. And the person goes in for an injunction saying, hey, it's been 20 years, you still got my fingerprints. Your retention policy said this, and you didn't follow it, and that sort of thing. Maybe it wasn't negligent, some other standard for an injunctive. You know, maybe that's the strict liability to get an injunction. But what would the damages be? Well, for an injunctive, I guess you wouldn't get a damage. That's right. Without negligence. Right. Or without knowing misconduct. So you're saying that's my question. How would it be inconsistent to answer one in the negative and one in the positive? It would be inconsistent to say that the word agreed requires some kind of monetary damage for the first one, but not to get an injunction. An agreed person is somebody who's legally protected, cognizable interest created by this statute. They cannot take your fingerprint without your informed, written consent. And, you know, it's important to tell people why they're collecting it, how long they're going to hold it. That information is required as part of the statute so you can sleep at night. Who's taking my retina scans and what's happening with them? And, you know, the Illinois legislature just happened to be out in front of the pack on this issue. This is this identity that is an issue that needs to be protected by regulating the collection of this stuff and telling people what's happening. Six Flags, part of the legislative history was this company that had collected all this data and then went bankrupt and people were wondering what was going to happen. And the statute that resulted wasn't only regulating what can happen with data. It was regulating how you can collect it, what you must do, what you must have written consent. Maybe Six Flags decided that sounds like a real pain in the butt to have to get written consent. We just want people to come through and do one of these beeps and keep moving so we can keep track of how often they come and go from the park. We can use that to track marketing efforts or whatever. We don't know why they were doing it, but they just simply decided, and they've said today, that they don't need to comply with this statute at all. Unless and until just everybody, just wait and see. As long as nothing bad happens. The problem is Six Flags wouldn't even have any way of knowing if their data was hacked. These hacks happen and the companies don't even know. The government has, you know, the CIA gets hacked and somebody takes their hacking tools. They don't even know until somebody finds out they're using them. Facebook is a giant company that doesn't even make anything. All they do is collect information about everybody on there, and they use that to sell their marketing. Data is important, and these are unique things that can't be changed. Your fingerprint can't be changed. Somebody steals this 14-year-old kid's fingerprint without his mother's knowledge or permission as required by the statute. We don't know what will happen someday. Supposedly they deleted it from some system. That's not really part of the record because we didn't do discovery. We're just here on these legal issues. Let's just say that, you know— Everything you say makes sense, but we're left with the language that the legislature gave us. I mean, we can't make up a law here. We have to interpret what the legislature did. And, you know, a lot of times we scratch our heads at what they were thinking and why they wrote what they wrote. But, I mean, clearly we know that the legislature knows how to write a statute that says any person whose biometric identifiers are taken in violation of this act has a private cause of action. They could say that. They didn't say that here, though. They said—they put this word aggrieved in here. Aggrieved by a violation. And we do have case law—I mean, whether you agree with it or not, it's out there— that says aggrieved means some form of injury. Not necessarily pecuniary injury, but some form of injury must be alleged. Right, and here's a privacy interest in your fingerprint. I don't know what your fingerprint looks like. That's an interest that's protected. A privacy interest. And I noted the footnote in my lawyer that talked about that. Also a pecuniary interest. The problem is this. We are left with these questions. We may decide this case one way on these questions and another way when it comes back after proofs are heard. But the question is very specific, and it is that the only injury alleged in the complaint is a technical violation. I mean, you're not— Well, it's a technical violation, but it's a technical statute. I mean, if I was driving 100 miles an hour to get here, technically I was violating the law. But if your complaint doesn't allege a privacy injury, if your complaint doesn't allege a pecuniary injury, all these things that you're talking about are things that happen and things that could happen, which you could certainly go back and file an amended complaint and put all that stuff in, and then you've alleged more than just a technical violation. But the question here that we have to answer, the way I'm reading it, and tell me if you read it differently, the only injury alleged in the complaint is a violation of 15B, which to me means advice and consent. Yeah. And the question is, what rights does the statute create and protect? And those are the ones that were injured. And that's what I'm saying. The rights that were injured were the secret fingerprint that you need. It's almost impossible for anybody to have the same fingerprint as you. Also, you have this informational injury. You are, Six Flags shall not collect fingerprints unless they tell you these things in writing and get your written approval. That's an injury when they don't give you those things. They're just saying no harm, no foul, because we didn't give you what the law says we must give you, or else we cannot take your fingerprint. That's the injury. The other injury. How would you distinguish the McCullough case that she relies so heavily upon? I would say that's a – is that the trial court opinion from the Cook County Service Board? No, this is from the – I think it's an out-of-state opinion. I mean, certainly we aren't bound by it. But she relied on its federal court. Oh, it's just Coleman in the northern district of Illinois. Right. Well, your Honor, she first – she was – I mean, she did point out there's two different things. One is Article III standing, and the other is the statutory standing. I think she said – kind of went back and forth and said maybe there is statutory standing, maybe there isn't. That's a question for Illinois courts, because we don't have Article III standing issues. We have this question of the statutory standing. And I know the Maglio case showed up this morning, but it wasn't mentioned in any of the briefs. And I know Justice Jorgenson wrote the opinion. That's a different case because the private right of action can only be brought under the Illinois Consumer Fraud Act, which specifically says actual damage. It doesn't say liquidated damage. It doesn't say statutory damage. Statutory damages are different because they're presumed – the legislature presumes that you are damaged when somebody does any of these things in violation of the statute. How much does it work? They don't know. That's why they said $1,000. If this statute said $1, I don't think we'd be dancing on the head of a pin here trying to figure out what could these words mean, because they're not that old and the statute's not that long. Any person aggrieved by means that strangers can't – I can't file an action saying I drove by Six Flags, saw the used fingerprint technology, and here's my action for an injunction. I'm not aggrieved because I wasn't affected by it. If the plaintiff wasn't aggrieved, who is? Only somebody whose information is stolen and used to process a mortgage loan or something like that. If the legislature wanted to narrowly create a private right of action based on some little narrow thing that could happen, they should have done that. Instead of just saying, here's things independently that must happen, and the person aggrieved by a violation can bring an action. Because these aren't just the background of the statute. They aren't suggestions that Six Flags probably should do these things, because if it doesn't, here's a private right of action for a person whose identity is stolen. The private right of action is for these things, any one of them. And you can look at any one of the five and come up with hypotheticals about how nobody's really hurt by any of that. If somebody sells your stuff. Your position is you were aggrieved. Your client was aggrieved as soon as the fingerprint is taken in the absence of compliance with the statute. That's the injury. However slight, that's the injury. We're not here to value the injury, but we're here to establish whether or not that's a sufficient injury to satisfy the standard of aggrieved party. Yes, yes. I mean, Section 15c shows that the legislature knows that this data can be sold, leased, traded, or otherwise profited from because they prohibited it. So that shows you there's a property interest in your fingerprint. It's valuable to people. That's why they collect it. That's why people would be willing to buy it or sell it. Six Flags could take their database and give it to one of their subsidiaries and use it for whatever, and then somebody would say, hey, what did you do? You sold it or you leased it or you traded it? And they'd say, no, no harm, no foul. Nothing bad happened. We're just using it at all our other companies, and now this company's using it. And it's a technical violation. We grant you that. But there was no monetary law. You know, if the statutory damage was a dollar, I really feel these arguments wouldn't be made. And it's sort of a hostility to lawsuits or class actions or whatever that sort of feels like the underlying current of this. If this statute said you can't have a class action, it would be a $1,000 claim, maybe a $5,000 claim. I still don't think we'd be here. I don't think it would be such a difficult head-scratcher about what do these words mean. Any person aggrieved by a violation of this act. Who's protected by the act and who was aggrieved? The plaintiff. One of the arguments about the words of the statute is that there's a difference between a party and an aggrieved party. And you're right. The plaintiff is the aggrieved party. The defendant is not aggrieved. That's the difference. It's not that. Let's see. Is that my time is up? In a strict liability situation, is there an aggrieved party? Yes. Does there have to be an aggrieved party? In a strict liability situation, does there have to be an aggrieved party? I mean, if they violated the statute, then the person whose rights were violated, whether or not they did it on purpose, is an aggrieved party. Do you have a question? Sorry. Thank you very much. Thank you, Your Honor. Do you wish to reply? Yes. Thank you, Your Honor. Thank you. A few points in rebuttal. Number one, we didn't say we didn't need to comply with the statute. We didn't say any of the kind. The company did comply with the statute. We're simply saying that there's no right of action to enforce the statute as written without injury. Second, there was nothing surreptitious done here. No one was lied to or tricked. Look at the language of the amended complaint, and it said the plaintiff was asked to scan his finger. Third point, there were questions when each of us argued about could there be a different outcome on the first question and on the second question. And I suppose hypothetically there could be on a different set of allegations. The core element for any injunctive relief is irreparable harm, the risk of irreparable harm. The tree is going to be bulldozed tomorrow. I needed injunction to stop that. There are no allegations like that here. There is no one who said if you don't pay me more to keep this information secret, I'm going to disclose it tomorrow. I'm going to sell it to a third party tomorrow. There's no allegations of irreparable harm being risked whatsoever. But what about the holding of the information ad infinitum? I mean, if somebody's holding my fingerprint or my retinal scan forever, I mean, there's certainly we've seen that we read about it every day. There are breaches. A few points of clarification. Is that at risk? A few points of clarification, Your Honor. One is the actual fingerprint is not retained. The finger is scanned. It's converted to a unique numerical template. Okay. My identifiers, though. I'm missing words. And your point is could it be retained forever? And what this statute does is says you need a retention period. And when you have a season pass, the data is restored, stored for the season. Well, I know the statute says that. But, I mean, there are allegations out that you took it in violation of the statute. So I'm going to assume that you're going to dispose of it in compliance with the statute. I'm just saying, if we have a violation of the statute, and you're talking about adjunctive relief, shouldn't I be able to go in and say that there's a risk of irreparable harm by just holding my identifiers? Well, in the Padilla case, for example, the court said the mere retention, there's no actual harm there. And we think the logical principle, the logical extension of that, is that the technically incorrect collection in the first instance, again, there's no actual harm. Counsel argued that the injury is the taking of the identifier in violation of the act. And he certainly couldn't point to any actual damages that resulted from that. And I heard no response to the argument that liquidated damages are to be a reasonable estimate of actual damages, that there must be some actual harm. It's not a penalty. I did want to respond to his point. He said Maglio had not been cited in any of the briefs. It was cited, Your Honor, in our reply brief. And I think it is instructive also on this point to, you know, the loss of my private information, the loss in the sense of you now have it. This court rejected that absent disclosure in the Maglio case. So I would ask that you look at it as we had cited it. I would ask you to answer each of the questions no and reverse the circuit court. Thank you. Thank you both very much for very enlightening arguments. And we will issue an opinion in due time. And we are in recess for the day.